FILED & ENTERED

SEP 25 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Kevan Harry Gilman,<br><br><br><br><br>Debtor. | Case No.: 1:11-bk-11603-VK<br><br>CHAPTER 7<br><br>**MEMORANDUM OF DECISION**<br><br>Date:    January 28-29, 2019<br>Time:    9:30 a.m.<br>Place:    Courtroom 301<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367 |

## I. INTRODUCTION

Creditors Tammy R. Phillips and Tammy R. Phillips, a Prof. Law Corp. ("Creditors") object to a claim of homestead exemption by debtor Kevan Harry Gilman ("Debtor"). Previously, the Court sustained Creditors' objection as to Debtor's claim of disability enhancement and overruled the objection as to Debtor's general right to a homestead exemption under California Code of Civil Procedure ("CCP") § 704.730.

The Ninth Circuit Court of Appeals issued an opinion remanding this Court's original decision, in part, for the Court to decide two remaining issues: whether Debtor intended to reside at his homestead as of the petition date, and whether any equitable theories under California law

prevent Debtor from claiming a homestead exemption under CCP § 704.730.  For the reasons set forth below, the Court holds that Debtor intended to reside at the subject property as of the petition date, and that the equitable theories proffered by Creditors do not prevent Debtor from claiming a homestead exemption under CCP § 704.730.

## II. JURISDICTION

The Court has jurisdiction over this matter because the "allowance or disallowance of claims against the estate or exemptions from property of the estate" constitutes a "core proceeding" under Title 11. 28 U.S.C. § 157; *see also In re Gilman*, 887 F.3d 956, 961 (9th Cir. 2018).

## III. BACKGROUND

### A.  Procedural History

On February 7, 2011, Debtor filed a voluntary chapter 7 petition.  On February 21, 2011, Debtor filed his first set of schedules [doc. 12] and claimed an interest in real property located at 6553 Varna Avenue, Van Nuys, California 91401 (the "Varna Property") [doc. 12].  On August 4, 2011, Debtor filed an amended schedule C, in which he claimed an exemption in the Varna Property in the amount of $104,000 pursuant to CCP § 704.730 [doc. 35].

On July 17, 2012, Creditors filed a renewed motion objecting to Debtor's claim of a homestead exemption (the "Objection") [doc. 73].  On August 7, 2012, the Court held a hearing on the Objection.  At that time, the Court issued a ruling overruling the Objection, except as to Debtor's claim of an enhanced homestead exemption [doc. 84].

On January 6, 2015, the Court entered an order overruling the Objection, except as to Creditors' objection to Debtor's claim of a disability enhancement to Debtor's homestead exemption (the "Homestead Exemption Order") [doc. 315].  The Court subsequently held an evidentiary hearing regarding Debtor's claim of a disability enhancement, after which time the Court sustained Creditors' objection to Debtor's claim of a disability enhancement.  On January 20, 2015, Creditors filed a motion for new trial and/or a motion to vacate the Homestead Exemption Order (the "Motion for New Trial") [doc. 321].  On March 18, 2015, the Court held a

hearing on the Motion for New Trial.  On April 10, 2015, the Court entered an order denying the Motion for New Trial [doc. 368].

On April 1, 2015, Creditors appealed the Homestead Exemption Order [doc. 361].  On February 22, 2016, the district court affirmed the Homestead Exemption Order [doc. 495].  On August 22, 2016, Creditors appealed the district court's ruling to the Ninth Circuit Court of Appeals [doc. 496].  On April 13, 2018, the Ninth Circuit Court of Appeals issued its opinion (the "Court of Appeals Opinion"). *In re Gilman*, 887 F.3d 956 (9th Cir. 2018).  In the Court of Appeals Opinion, the Court of Appeals stated that the only issues remaining for adjudication on remand are: (A) whether Debtor intended to reside at the Varna Property; and (B) whether California equitable law could be used to deny Debtor's claim of a homestead exemption (the "Issues on Remand").  *Id.*, at 966.

From January 28, 2019 through January 29, 2019, the Court held an evidentiary hearing on the Issues on Remand.  For the reasons set forth below, the Court will enter an order overruling the Objection based upon the following findings of fact and conclusions of law made pursuant to Federal Rule of Civil Procedure 52(a), as incorporated into Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

### B. *Debtor's History with the Varna Property*

In approximately 1961, when Debtor was a child, Debtor's family moved into the Varna Property.[1]  Debtor grew up in the Varna Property and resided there until moving away to college.  Although Debtor intermittently lived elsewhere, in around 1998, Debtor permanently moved back into the Varna Property.  According to Kwei-Shiang Gilman, Debtor's former spouse, Debtor was attached to the Varna Property and had sentimental feelings towards the house.  The Varna Property belonged to Debtor's parents and Debtor's father had made improvements to the home.

---

[1] The Court may take judicial notice of the bankruptcy and adversary proceeding dockets.  Unless this decision references a document from these dockets or an exhibit, the facts are derived from testimony provided at trial.

1   In around 2002 or 2003, Debtor and Ms. Gilman took title to the Varna Property.[2]

2   Debtor has resided in the Varna Property since that time.  In fact, Debtor not only resided in the

3   Varna Property as of the petition date, but continued to reside in the Varna Property as of the

4   date of trial, approximately eight years after the petition date.

5   **C.  *The Litigation with Creditors***

6   Starting in 2003, Creditors and Debtor became entrenched in state court litigation.

7   Eventually, the parties' dispute resulted in a judgment in favor of Creditors (the "State Court

8   Judgment").  In 2010, when Creditors' continued efforts to collect on the State Court Judgment

9   began to strain Debtor's marriage, Debtor decided to sell both his office property (the "Office")

10  and the Varna Property to satisfy his debt to Creditors.  Although Debtor had already consulted

11  with a bankruptcy attorney at this time, Debtor elected to attempt a satisfaction of the State Court

12  Judgment through a sale of his properties prior to exercising bankruptcy as an option.

13  To this end, Debtor, his attorneys, the escrow company and the buyers' representatives

14  attempted to obtain a payoff demand from Creditors. Exhibits 1-10, 13.  Between December

15  2010 and the petition date, the involved parties sent multiple emails or letters to Creditors

16  regarding the need for a payoff demand prior to closing escrow. *Id*.  Creditors either refused to

17  provide a payoff demand or stated they might consider a solution that did not involve providing

18  an acknowledgment of satisfaction of the judgment owed by Debtor. *Id*.  Either way, Creditors

19  did not provide an amount.  In fact, at trial, Creditors' counsel testified that, to date, Creditors

20  have not estimated the amount of their claim against Debtor.

21  Being unable to obtain a payoff demand by Creditors, Debtor decided to cancel the sale

22  of the Varna Property and opt for bankruptcy protection.  According to Debtor, as of the petition

23  date, Debtor had decided to stay in the Varna Property for the rest of his life and discharge his

24  debt to Creditors through bankruptcy.  As such, Debtor and his family continued to reside in the

25  Varna Property.  The pending sale of the Varna Property took several weeks to unwind;

26

27

28

---

[2] Postpetition, Debtor and Ms. Gilman initiated marital dissolution proceedings.  As of the date of trial, their divorce had not been finalized.

however, by February 24, 2011, approximately three weeks after the petition date, the pending sale had been completely canceled.

### D. Debtor's Postpetition Activity

Postpetition, Debtor rented both the Varna Property and the Office to various tenants. The tenants made monthly payments to either Debtor or Ms. Gilman in varying amounts, from $600 to $1,100. Debtor himself continued to reside at the Varna Property, but did not pay rent to the estate for his use of the Varna Property.

In addition to the payments from tenants of these properties, Debtor and/or Ms. Gilman received, postpetition, a tax refund check and a refund check from Debtor's former attorneys. According to Ms. Gilman, the tax refund and the rent money from the Office were used to pay expenses related to the Office.

Postpetition, Debtor also withdrew funds from accounts considered property of the estate. *See* Court's Ruling [1:11-ap-01389-VK, doc. 668]. For this conduct, the Court denied Debtor his discharge under 11 U.S.C. § 727(a)(2)(B). *Id.*

### E. Creditors' Arguments

In their trial briefs filed in preparation for trial [docs. 652, 653, 656], Creditors argued that the Court should sustain their objection to Debtor's claim of a homestead exemption on the following bases: (A) Debtor did not intend to reside at the Varna Property because Debtor attempted to sell the Varna Property; (B) Debtor used funds generated from property of the estate postpetition; (C) Debtor claimed the homestead exemption in bad faith; (D) Debtor has unclean hands based on his postpetition conduct; (E) Debtor's use of estate funds constitutes unjust enrichment; (F) Debtor should be equitably estopped from claiming a homestead exemption because he listed the Varna Property for sale; (G) the doctrine of laches prevents Debtor from claiming a homestead exemption because Debtor did not timely indicate in his schedules that the Varna Property was in escrow; and (H) that 11 U.S.C. § 365 preempts California's exemption statutes.[3]

---

[3] Creditors also argue that the Court should limit the homestead exemption amount to the statutory amount applicable in 2008, when Creditors recorded their judgment liens. The Court already has ruled on this issue [doc. 84], and this issue is beyond the scope of the Issues on Remand set forth by the Ninth Circuit Court of Appeals.

## IV. ANALYSIS

### A. Burden of Proof

Pursuant California Code of Civil Procedure § 703.580(b), "[a]t a hearing under this section, the exemption claimant has the burden of proof."  "[W]here a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation." *In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016); *see also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (holding that the burden of proof is a substantive element of state law applicable when federal courts apply state law).  As such, Debtor has the burden of proving he intended to reside at the Varna Property as of the petition date.

### B. Debtor's Intent to Reside at the Varna Property

Under California Code of Civil Procedure § 704.710(c), a "homestead" is "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead."

> This "requires only that the judgment debtor reside in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead." *In re Elliott*, 523 B.R. 188, 196 (BAP 9th Cir. 2014) (quoting *Tarlesson*, 184 Cal. App. 4th at 937, 109 Cal.Rptr.3d 319).  It does not require that the debtor continuously own the property. *Id.*

> To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there. *Diaz*, 547 B.R. at 335; *Ellsworth v. Marshall*, 196 Cal.App. 2d 471, 474, 16 Cal.Rptr. 588 (1961) ("The physical fact of the occupancy and the intention with which the premises are occupied 'are both elements to be considered in determining the actual residence.'") (quoting *Lakas v. Archambault*, 38 Cal.App. 365, 372, 176 P. 180 (1918)).

*In re Gilman*, 887 F.3d 956, 964–65 (9th Cir. 2018).

"Exemptions serve to protect and foster a debtor's fresh start from bankruptcy." *In re Rolland*, 317 B.R. 402, 412-13 (Bankr. C.D. Cal. 2004).  "Exemption rights are determined as of

the date of the bankruptcy petition." *In re Combs*, 166 B.R. 417, 418 (Bankr. N.D. Cal. 1994)

(citing to *Myers v. Matley*, 318 U.S. 622, 626–28 (1943).

Debtor has met his burden of proving that, as of the petition date, he intended to reside at

the Varna Property. Although Debtor listed the Varna Property for sale prepetition, the purpose

of the sale of the Varna Property and the Office was to satisfy the judgment in favor of Creditors.

However, Creditors refused to provide an amount that would satisfy the judgment. The Court

finds credible Debtor's testimony that, as of the petition date, Debtor believed he would be

unable to satisfy the judgment in favor of Creditors and intended to retain his home and

discharge the debt to Creditors through bankruptcy.[4]

In fact, as of the date of trial, eight years after the petition date, Debtor continued to

reside at the Varna Property. Given Debtor's strong family ties to his childhood home, his

continuous residency at the Varna Property and Debtor's testimony that he elected to proceed via

bankruptcy instead of a sale of the Varna Property, the Court holds that Debtor intended to reside

at the Varna Property as of the petition date.

### C. Creditors' Equitable Theories

Creditors also argue that Debtor should not be entitled to claim a homestead exemption

based on several equitable theories under California law. Before addressing Creditors' equitable

arguments, the Court notes that "California intended a liberal homestead statute so its citizens

would not lose their homes through a technicality." *In re Canino*, 185 B.R. 584, 590 (B.A.P. 9th

Cir. 1995). "Homestead laws are designed to protect the sanctity of the family home against a

loss caused by a forced sale by creditors." *Amin v. Khazindar*, 112 Cal. App. 4th 582, 588 (Ct.

App. 2003). In *Amin*, the court expanded on California policy:

> The homestead exemption ensures that insolvent debtors and their families are not
> rendered homeless by virtue of an involuntary sale of the residential property they
> occupy. Thus, the homestead law is not designed to protect creditors, but protects
> the home against creditors of the declarant, thereby preserving the home for the
> family. This strong public policy requires courts to adopt a liberal construction of

---

[4] Creditors reference certain postpetition communications as evidence that Debtor intended to sell the Varna
Property postpetition and note that the sale was not completely canceled until three weeks after the petition date.
Exhibit 17. There is no evidence Debtor received the postpetition communications, and, in any event, the Court
finds that Debtor intended to reside at the Varna Property as of the petition date, irrespective of any delay with the
cancellation of the sale.

the law and facts to promote the beneficial purposes of the homestead legislation
to benefit the debtor.

*Id*. "When the dwelling house exemption was first enacted, the Legislature was quite obviously concerned with the large number of homeowners who were not receiving the benefits of the homestead because of their ignorance of the law or their failure to satisfy the technical requirements for declaring a homestead." *San Diego White Truck Co. v. Swift*, 96 Cal.App.3d 88, 92 (Ct. App. 1979). "The new law [adding entitlement to an automatic homestead exemption] gave the debtor-homeowner additional protection for his home against the claims of creditors." *Id*. The legislative intent behind enacting the homestead exemption statutes indicate that the statutes were meant to be "of a remedial and humane character." *Thorsby v. Babcock*, 36 Cal.2d 202, 204 (1950). "The object of all homestead legislation is to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors." *Id*. (internal citations omitted).

In light of California strong public policy behind a liberal application of the homestead exemption statutes and for the reasons set forth below, Creditors have not presented any theory that would serve to bar Debtor's claim of a homestead exemption.

### i.    *Liability for Debtor's Use of Estate Property*

Creditors request disallowance of Debtor's claim of a homestead exemption based on Debtor's postpetition use of the Varna Property without paying rent to the estate and Debtor's postpetition collection of funds that may belong to the estate. However, Creditors have not provided any authority that would empower this Court to disallow Debtor's homestead exemption based on Debtor's use of estate property.

In fact, Creditors disregard the holding in *Law v. Siegel*, 571 U.S. 415, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014). In *Siegel*, the Supreme Court of the United States held that a bankruptcy court did not have the power to surcharge a debtor's exemption based on the debtor's bad faith conduct, or to disallow a debtor's claim of an exemption on a ground not specified in the Bankruptcy Code. *Siegel*, 571 U.S. at 424-25. The Supreme Court noted that the Bankruptcy

Code provides methods for courts to address misconduct by debtors, such as "deny[ing] the dishonest debtor a discharge." *Id.*, at 426.

Under *Siegel*, the Court does not have the power to disallow Debtor's homestead exemption based on Debtor's postpetition conduct. The Bankruptcy Code does not provide for disallowance of Debtor's homestead exemption based on the conduct referenced by Creditors. In any event, the Court already denied Debtor his discharge based on Debtor's postpetition dissipation of property. The Court will not deny Debtor his exemption based on Debtor's use of other property of the estate, i.e., living in the Varna Property after the petition date.

### ii. Bad Faith

Creditors' next theory is that California law provides for denial of an exemption based on a judgment debtor's bad faith. However, the cases cited by Creditors do not involve application of any such theory to disallowance of a debtor's claim of a homestead exemption. *Greely v. Townsend*, 25 Cal. 604 (1864), a decision that is 155 years old, presented the issue of whether, under the law existing at the time, a state supreme court had discretion to award a citation to appear before the Supreme Court of the United States. In deciding such jurisdictional issues, the court referred to the underlying case and mentioned that one of the questions presented was whether "the judgment against any title, right, privilege or exemption [was] specially set up or claimed by the defendant in good faith." *Greely*, 25 Cal. at 615. The case does not discuss the modern California homestead exemption scheme at all.

In *Bertozzi v. Swisher*, 27 Cal.App.2d 739 (Ct. App. 1938), the court's comment regarding debtors "bring[ing themselves] within the spirit" of exemption laws referred to the debtor's burden of proving his entitlement to an exemption in a horse:

> Under well-settled rules a debtor claiming the benefit of the exemption laws must bring himself within the spirit thereof; that is to say, the burden is upon him to show he is entitled to the exemption (Murphy v. Harris, 77 Cal. 194, 19 P. 377; People v. Thompson, 5 Cal.App.2d 655, 43 P.2d 600); and it is our conclusion that the facts averred in defendant's affidavit are legally insufficient to establish a case of exemption within the letter or the spirit of the statute.

*Bertozzi*, 27 Cal.App.2d at 741. The *Bertozzi* court did mention good faith, but in the following context:

> As said in many of the earlier decisions, some of which are hereinafter cited, the fundamental reason for the enactment of exemption laws is to protect a person, whatever his occupation might be, from being reduced by financial misfortune to abject poverty; therefore, to accomplish that end and in order to encourage industry and thrift, laws of that type have been framed which place beyond the reach of creditors not only the debtor's home but also various kinds of personal property reasonably necessary for him to have in order to earn a living for himself and his family; and from the beginning, among the exemptions thus granted are to be found certain domestic animals, including a limited number of horses. However, as pointed out by those earlier cases, horses so exempt are intended in good faith to be used as instruments of husbandry or labor; in other words, they must be work horses; and no case has been cited by defendant from any jurisdiction wherein it has been held that horses used solely for racing purposes are exempt; nor has he called to our attention any authority declaring even by implication that exemption laws should be so construed or extended.

*Id.*, at 742.  As such, the court reiterated the importance of exemption statutes in California, but did note that the claim of exemption must fit the parameters of the statute.  Under *Bertozzi*, an analogous situation using our facts might be if Debtor claimed a homestead exemption without a good faith intent to reside in the Property, because the pertinent statute protects a debtor's residence, not other properties.  However, *Bertozzi* says nothing about general, unrelated "bad faith" conduct preventing a debtor from claiming an exemption to which the debtor would otherwise be entitled.

In *In re Millington's Estate*, 63 Cal.App. 498 (Ct. App. 1923), a probate court held that a watch and some jewelry was exempt as "necessary wearing apparel" under the relevant exemption statute.  The court noted, in relevant part:

> Watches are so generally worn and considered necessities by persons of every financial condition that, under a liberal construction of section 690, it is reasonable to presume that the legislature intended to include them as necessary wearing apparel. The same may be said as to ornaments of a character and value generally worn by persons of small income or little property. It is not to be presumed, however, that the legislature intended to exempt expensive diamonds worn as mere ornaments. The purpose of exemption laws is to save debtors and their families from want, not to enable them to wear luxurious ornaments at the expense of their creditors.

*Millington's Estate*, 63 Cal.App. at 504.  Here, there is no assertion that Debtor is somehow claiming an excessive exemption beyond the confines of the homestead exemption statute.  As such, *Millington's Estate* is inapplicable to the facts here.

Creditors' citations to *In re Noblit*, 72 F.3d 757 (9th Cir. 1995), and *Gladstone v. U.S. Bancorp*, 811 F.3d 1133 (9th Cir. 2016), are also inapposite as both of those cases involved attempts by debtors to claim an exemption in transferred property.  In this case, the Varna Property has not been transferred.

Finally, *Spencer v. Lowery*, 235 Cal.App.3d 1636 (Ct. App. 1991), which Creditors appear to cite for the proposition that Debtor cannot actually use the homestead exemption statute in any forced sale, has been rejected by the Ninth Circuit Court of Appeals. *In re Pladson*, 35 F.3d 462 (9th Cir. 1994).

In any event, Creditors have not pointed to any bad faith conduct by Debtor *related to Debtor's claim of a homestead exemption*.  A vast majority of the conduct referenced by Creditors relates to Debtor's postpetition conduct.  The Court already has dealt with this conduct using a method sanctioned by the Bankruptcy Code; because of Debtor's postpetition dissipation of other estate property, the Court denied Debtor his discharge.

Furthermore, Debtor's failure to indicate that the Varna Property was in escrow as of the petition date does not appear to have occurred in bad faith.  Creditors acknowledge that the Varna Property was fully encumbered as of the petition date.  In fact, Creditors' judgment liens against the Varna Property apparently prevented the prepetition sale of that property.  As such, Debtor did not stand to benefit from omitting information about the escrow from his schedules.  Moreover, because Creditors were contacted regarding the potential sale of the Varna Property, Creditors were aware of the sale efforts.  Consequently, the Court concludes that Debtor did not conceal information about the escrow in bad faith.

### iii.    *Unclean Hands*

Creditors also assert that Debtor had "unclean hands."  However, none of the cases cited by Creditors involved a court disallowing a homestead exemption based on a debtor's "unclean hands."  Rather, the cases cited by Creditors set forth the general legal standard for the doctrine of unclean hands.

> The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. The determination of the unclean hands defense cannot be distorted into a proceeding to try the

general morals of the parties. Courts have expressed this relationship requirement in various ways. The misconduct "must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." "[T]here must be a direct relationship between the misconduct and the claimed injuries ... ' "so that it would be inequitable to grant [the requested] relief." ' " "The issue is not that the plaintiff's hands are dirty, but rather ' " 'that the manner of dirtying renders inequitable the assertion of such rights against the defendant.' " ' " The misconduct must " ' "prejudicially affect ... the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." ' "

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 979 (Ct. App. 1999) (internal citations omitted).  Based on the general principles above, courts use a three-prong test to determine whether unclean hands should bar relief: "(1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries." *Id*.

Here, Creditors have not shown "analogous case law;" Creditors do not cite any cases that applied the unclean hands doctrine to bar a claim of a homestead exemption.  To the extent California law does allow for denial of a claim of homestead exemption under the unclean hands doctrine, the other elements of the doctrine are not present.  First, any "misconduct" Creditors assert should be somewhat related to Debtor's claim of a homestead exemption.  Debtor's postpetition transfers from his retirement accounts, for which the Court denied Debtor his discharge, do not bear a sufficient relationship to Debtor's claim of a homestead exemption.

In addition, Creditors' contention that the unclean hands doctrine should apply because Debtor did not indicate that the Property was in escrow as of the petition date does not qualify as the type of "misconduct" contemplated by this doctrine; Debtor *did* schedule the Varna Property and creditors and the chapter 7 trustee could investigate the Varna Property and learn that the Varna Property was in escrow. *See Kendall-Jackson*, 76 Cal.App.4th at 979 ("Not every wrongful act constitutes unclean hands.… Any conduct that violates conscience, or good faith, or equitable standards of conduct is sufficient cause to invoke the doctrine.").  For the reasons noted above, Debtor's failure to note that the Varna Property was in escrow does not rise to this level of conduct, and Creditors have not otherwise shown that Debtor had "unclean hands" in claiming a homestead exemption.

### iv.    *"Estoppel by Unjust Enrichment"*

The sole case cited by Creditors in support of their unjust enrichment theory is *Tarlesson*, 184 Cal.App.4th at 936-39, a case which stands for the exact opposite proposition set forth by Creditors.  In fact, *Tarlesson* is an important case in stressing the importance of a homestead exemption under California law.

In *Tarlesson*, a judgment creditor sought to levy upon the judgment debtor's home to satisfy a judgment in the creditor's favor. *Tarlesson*, 184 Cal.App. at 934.  Previously, the debtor had transferred her residence to her cousin for the purpose of arranging financing because the debtor was unable to qualify for a loan. *Id*., at 935.  According to the debtor, she and her cousin had agreed that, at all times, the debtor retained a beneficial interest in her home. *Id.*  At the time the judgment creditor moved to levy upon the residence, title to the residence was not in the judgment debtor's name (subsequently, the debtor's cousin reconveyed the residence to the debtor and backdated the date of conveyance to the same date the debtor conveyed the residence to the cousin). *Id.*

Nevertheless, at the time the judgment creditor sought to levy upon the residence, the debtor asserted a claim to a homestead exemption. *Id*., at 934.  In response, the creditor argued that: (A) the debtor lost her right to claim a homestead exemption when she conveyed the property by grant deed to a different entity; and (B) the debtor should be barred from claiming a homestead exemption under the doctrines of equitable estoppel and/or unjust enrichment. *Id*., at 935.  The trial court disagreed, holding that the debtor was entitled to a claim of homestead exemption because the residence was the debtor's principal dwelling when the judgment creditor's lien attached to the residence and continuously thereafter. *Id.*  The appellate court affirmed. *Id*., at 934.

The appellate court first stressed that "[c]ourts 'adopt a liberal construction of the law and facts to promote the beneficial purposes of the homestead legislation *to benefit the debtor*.'" *Id*., at 936 (quoting *Amin*, 112 Cal.App.4th at 588) (emphasis added).  The court then addressed the creditor's argument that the debtor was not entitled to a homestead exemption because the debtor transferred title to her cousin:

> Several California cases recognize that judgment debtors who continuously reside in their dwellings retain a sufficient equitable interest in the property to claim a homestead exemption even when they have conveyed title to another. (*Breeden v. Smith* (1953) 120 Cal.App.2d 62, 66, 260 P.2d 185; *Putnam Sand & Gravel Co., Inc. v. Albers* (1971) 14 Cal.App.3d 722, 726, 92 Cal.Rptr. 636; *Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 81, 112 Cal.Rptr.2d 802.) Such a result is consistent with the purpose of California's homestead exemption to protect one's dwelling against creditors. (*Amin v. Khazindar, supra,* 112 Cal.App.4th at p. 588, 5 Cal.Rptr.3d 224; accord, *Wells Fargo Financial Leasing, Inc. v. D & M Cabinets, supra,* 177 Cal.App.4th at p. 67, 99 Cal.Rptr.3d 97.)
>
> Broadway does not dispute that the property was Tarlesson's principal residence when it acquired its judgment lien. Nor does it dispute that she has continuously resided in the home since 1984, and there is no evidence that rebuts Tarlesson's claim that, "At all times I retained the beneficial interest in my home, which was acknowledged by Peola [Lane]." In the circumstances, Tarlesson's continuous occupancy of her home qualifies it as her "homestead" under section 704.710, subdivision (c). We will not also read a requirement into sections 703.020 or 704.710 that Tarlesson must have held continuous *title* to her home to claim the homestead exemption.

*Id.*, at 937–38.[5]  The creditor then argued that, because the debtor failed to pay the expenses of ownership of property, such as mortgage, taxes and insurance, the debtor reaped the benefits of owning her residence without paying for them, and allowing the debtor to benefit from a claim of a homestead exemption would result in unjust enrichment. *Id.*, at 938.  In response to this argument, the court held:

> But the theory of unjust enrichment applies to prevent one party from obtaining a windfall at the expense of another in circumstances where its application involves no violation or frustration of law or opposition to public policy, either directly or indirectly.  Were we to disallow Tarlesson's claim of exemption on a theory of unjust enrichment, *we would frustrate the application of section 704.710 and the liberal construction of the homestead exemption*. "[T]he homestead law is not designed to protect creditors and should be liberally construed to promote the beneficial purposes of the homestead legislation to benefit the debtor [and his family]."

*Id.*, at 938-39 (emphasis added).

Under *Tarlesson*, Debtor's use of the Varna Property without paying rent to the estate would not bar Debtor from claiming a homestead exemption in the Varna Property, nor would

---

[5] In fact, the Ninth Circuit Court of Appeals relied on *Tarlesson* in its decision in *In re Gilman*, 887 F.3d 956, 965 (9th Cir. 2018), as support for its holding that a debtor need not have title to the property to claim a homestead exemption, such as where the property may be in escrow but the debtor still resides in the property.  Nevertheless, Creditors continue to assert that the escrow should bar Debtor's claim of a homestead exemption.

the fact that the Varna Property was in escrow as of the petition date prevent Debtor from his right to an exemption.  In light of the strong public policy under California law, the Court will not disallow Debtor's claim of a homestead exemption on the basis of unjust enrichment.

### v.    Equitable Estoppel

Once again, Creditors do not present California law applying the doctrine of equitable estoppel to bar a debtor's claim of a homestead exemption.  However, Creditors cite *In re Lua*, 529 B.R. 766 (Bankr. C.D. Cal. 2015), *rev'd and remanded*, 692 F.App'x 851 (9th Cir. 2017), a decision that has been reversed and remanded by the Ninth Circuit Court of Appeals (the "Lua Appellate Opinion").  In *Lua*, the debtor filed a chapter 7 petition and listed a 30% interest in the property in which the debtor resided with her non-filing spouse. *Lua*, 529 B.R. at 768.  In her schedule C, the debtor claimed a $75,000 homestead exemption in the residence. *Id*.

Subsequently, the debtor filed amended schedules and indicated that the debtor had no interest in the residence, and that the property was owned by her non-filing spouse and two of the spouse's family members. *Id*., at 769.  The debtor removed her claim of a homestead exemption from her amended schedule C, instead asserting exemptions in additional personal property. *Id*. However, the chapter 7 trustee's investigation revealed that the debtor's interest in the residence could be monetized. *Id*.  As such, the trustee filed an adversary proceeding, which resulted in a default judgment holding that the debtor had a community property interest in the residence. *Id*., at 770.  The bankruptcy court eventually ordered turnover of the residence to the estate. *Id*.

Two years later, the trustee retained real estate brokers to market and sell the residence. *Id*.  Around that time, the debtor's non-filing spouse and the trustee entered into a settlement agreement whereby the spouse agreed to sale of the residence if the remaining proceeds would be equally divided between the spouse and the estate. *Id*.  The motion to approve this compromise was unopposed, and the court approved the agreement. *Id*.

The debtor did not cooperate with the trustee's marketing efforts. *Id*.  As such, the trustee filed a motion to compel the debtor to turn over the residence. *Id*.  The debtor did not oppose the turnover motion. *Id*.  The debtor did vacate the residence, but left the front door dangling from the hinges, which resulted in the real estate broker advancing funds to repair the door. *Id*., at 770-

71. Three years after the petition date and 33 months after the debtor filed her first amended schedules deleting her claim of an exemption, the debtor filed a second set of amended schedules, this time claiming a homestead exemption in the amount of $100,000. *Id*., at 771. The claim of a homestead exemption would have resulted in unsecured creditors receiving no distribution from the sale of the residence. *Id*. The chapter 7 trustee objected to the claim of a homestead exemption, asserting bad faith, estoppel and laches. *Id*.

In assessing this objection, the bankruptcy court first discussed the effect of *Siegel*, 571 U.S. 415, 134 S.Ct. 1188, 188 L.Ed.2d 146, which held that a court may not, under 11 U.S.C. § 105(a), disallow a debtor's claim of an exemption based on bad faith. *Id*., at 773. The court agreed that *Siegel* prevented the court from disallowing the exemption under 11 U.S.C. § 105(a). *Id*., at 773-74. The court then turned to California equitable theories. *Id*., at 775. The court noted that "California courts have long recognized that equitable estoppel applies to homestead exemptions." *Id*. Specifically, the court cited four California cases. *Id*. (citing *Jefferson v. Tom*, 52 Cal.App.2d 432 (Ct. App. 1942); *James v. P.C.S. Ginning Co.*, 276 Cal.App.2d 19 (Ct. App. 1969); *Viotti v. Giomi*, 230 Cal.App.2d 730 (Ct. App. 1964); *and In re Cecala's Estate*, 104 Cal.App.2d 526 (Ct. App. 1951)).

First, all of the cases relied on by *Lua* involved a declaration of homestead, not an automatic homestead resulting from a forced sale, such as the filing of a bankruptcy petition. Because the automatic homestead exemption, at issue here, applies to forced sales of property, whereas the declared homestead exemption applies to voluntary sales by the declarant, the strong policy considerations under California law are not present in the case of a declared homestead. As noted above, "[h]omestead laws are designed to protect the sanctity of the family home against a loss caused by a *forced sale by creditors*." *Amin*, 112 Cal.App.4th at 588 (emphasis added).

Moreover, in the Lua Appellate Opinion, the Court of Appeals held that equitable estoppel did not serve to bar the debtor's belated claim of a homestead exemption in her second amended schedules. Lua Appellate Opinion, 692 Fed. App'x at 852-53. The Court of Appeals stated:

The bankruptcy court found that Lua's First Amended Schedules were a representation, under oath, that she was not claiming a homestead exemption in the Property. But the First Amended Schedules cannot form the basis of an estoppel because they set forth all of the existing facts known to Lua. Those same facts were readily available to the Trustee, and the Trustee was fully aware of them. "[W]here the person pleading estoppel had knowledge of the facts, there is no reliance." *Sidebotham v. Robison*, 216 F.2d 816, 829 (9th Cir. 1954). The Trustee also knew, or should have known, that in the event circumstances changed, Lua could amend her exemptions "as a matter of course at any time before the case [wa]s closed." Fed. R. Bankr. P. 1009(a); *see also Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir. 1998) ("No court approval is required for an amendment, which is liberally allowed."), *abrogated on other grounds by Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014).

The bankruptcy court found that the Trustee had no knowledge or indication that Lua was going to file her Second Amended Schedules. However, the Trustee failed to present any evidence that at the time Lua filed her First Amended Schedules, she had reason to believe that she would amend her schedules again at some point in the future. Moreover, nothing in Lua's First Amended Schedules can be deemed a representation by Lua that she would not amend her exemptions again if circumstances changed. In fact, circumstances changed almost three years later when, at the request of the Trustee, the bankruptcy court entered an order finding that the Property was 100% community property, providing Lua a new factual basis to claim a homestead exemption.

Accordingly, the bankruptcy court shall allow Lua's claimed homestead exemption.

*Id.*, at 852-53. In holding that the bankruptcy court must allow the debtor's claim of a homestead exemption, the Court of Appeals essentially held that a debtor's schedules cannot form the basis of an equitable estoppel claim because the parties are aware that the debtor may amend her schedules at any time. As such, Creditors' citation to *Lua* is not helpful in the bankruptcy context, nor are the cases relied on by *Lua* analogous to debtors who are claiming an exemption under California's *automatic* exemption scheme. Pursuant to the Lua Appellate Opinion, that Debtor did not mention in his schedules that the Varna Property was in escrow does not mean that Debtor could not, at any point during the case, amend his schedules to include that information, and equitable estoppel does not apply in this context. As such, Creditors' equitable estoppel theory does not serve to bar Debtor's claim of a homestead exemption.

1

     *vi.*    **Laches**

2

    Creditors also assert the doctrine of laches should bar Debtor's claim of a homestead

3

exemption.  Here, Debtor claimed an exemption in the Varna Property in his first set of

4

schedules.  Nevertheless, Creditors appear to argue that, because Debtor did not immediately

5

disclose that the Varna Property was in escrow, or that Debtor was a party to an executory

6

contract, Debtor is barred by the doctrine of laches from claiming a homestead exemption.

7

    Nevertheless, Creditors do not cite any cases that use the doctrine of laches to bar a

8

homestead exemption.  Generally—

9
10
11
12
13
14
15
16

> "'The defense of laches requires unreasonable delay plus either acquiescence in
> the act about which plaintiff complains or prejudice to the defendant resulting
> from the delay.' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61,
> 68, 99 Cal.Rptr.2d 316, 5 P.3d 874.) Prejudice is not presumed from the simple
> fact of delay; it must be affirmatively shown. (*Piscioneri v. City of Ontario* (2002)
> 95 Cal.App.4th 1037, 1049, 116 Cal.Rptr.2d 38.) In determining whether a
> defendant has sustained its burden of proving laches, the court may consider the
> extent to which the defendant is partially responsible for the delay. (*Ibid.*)
> "Laches is an equitable defense, the existence of which is a matter commended to
> the discretion of the trial court, 'and in the absence of manifest injustice or lack of
> substantial support in the evidence, the trial court's determination will be
> sustained.' [Citation.]" (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626,
> 643, 267 Cal.Rptr. 350.)

17

*Farahani v. San Diego Cmty. Coll. Dist.*, 175 Cal.App.4th 1486, 1494 (Ct. App. 2009).

18

    The facts here do not establish a delay at all.  Debtor immediately claimed a homestead

19

exemption in the Varna Property in his first set of schedules.  Given Debtor's disclosure of the

20

Varna Property, the chapter 7 trustee and creditors could have promptly investigated the status of

21

the Varna Property.  Moreover, Creditors have been actively monitoring Debtor's bankruptcy

22

case.  Having been advised of the potential sale of the Varna Property, Creditors knew about the

23

escrow prior to the petition date.

24

    In the Lua Appellate Opinion, the Court of Appeals indicated that a delay in amending

25

schedules would not prevent a debtor from claiming an exemption in property.  Consequently,

26

the Court will not disallow Debtor's claim of a homestead exemption based on the doctrine of

27

laches.

28

*vii.*     ***Preemption***

Creditors' final argument is that bankruptcy law preempts conflicting state law. Creditors appear to be arguing that 11 U.S.C. § 365 preempts California exemption law. However, other than a blanket assertion, Creditors do not articulate any conflict between California's exemption statutes and 11 U.S.C. § 365.  There being no apparent conflict between the Bankruptcy Code and California's exemption statutes, and the Bankruptcy Code having expressly allowed for states to opt out of the federal exemption scheme, the Court will not disallow Debtor's claim of an exemption under a preemption theory.

## V. CONCLUSION

The Court finds that Debtor intended to reside at the Varna Property as of the petition date.  The Court also holds that the equitable theories set forth by Creditors do not prevent Debtor from claiming a homestead exemption under CCP § 704.730.  The Court will overrule the Objection and prepare an order that conforms to this Memorandum of Decision.

###

Date: September 25, 2019

Victoria S. Kaufman
United States Bankruptcy Judge